IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 13, 2024 Session

## COMMERCIAL PAINTING COMPANY INC. v. THE WEITZ COMPANY LLC ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-06-1573   JoeDae L. Jenkins, Chancellor**

_____

**No. W2019-02089-COA-R3-CV**

_____

This appeal is before this court on a remand from the Tennessee Supreme Court to address issues that had been previously pretermitted related to a punitive damages award. Upon consideration of the pretermitted issues in the present case, we affirm the judgment of the chancery court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Philip E. Beck, Atlanta, Georgia; Jeffrey C. Smith, Memphis, Tennessee; and John A. Templer, Jr., Des Moines, Iowa, for the appellants, The Weitz Company, LLC, Federal Insurance Company (NJ), and St. Paul Fire & Marine Insurance Company.

Scott A. Frick, Memphis, Tennessee, for the appellees, Commercial Painting Company, Inc., and Liberty Mutual Insurance Company (MA).

**OPINION**

**I.**

The origins of this case, which is now before the Tennessee Court of Appeals for the fourth time, trace back two decades. The Tennessee Supreme Court sketched out the long journey this case has endured in the following manner:

> This case stems from a contract dispute between a general contractor, The Weitz Company, LLC, and its drywall subcontractor, Commercial

Painting Company, Inc. Weitz was the general contractor on a multi-building retirement community in Shelby County. In December 2004, the parties entered into a contract for Commercial Painting to perform drywall work on the project.[1] The contract included a schedule detailing the phases and timing of construction. Weitz agreed to pay Commercial Painting $3,222,400 for its work. Change orders later increased the amount to $3,315,189. The parties had various disputes as the project progressed.

By the end of the contract, Weitz had paid Commercial Painting twelve of its seventeen pay applications. Weitz refused to pay the remaining five applications, claiming they were submitted untimely and contained improper change order requests.

In August 2006, Commercial Painting sued Weitz[2] and its sureties, Federal Insurance Company and St. Paul Fire & Marine Insurance Company, and The Village at Germantown in the Shelby County Chancery Court seeking $1,929,428.74 in damages for breach of contract, including attorney's fees.[3] Commercial Painting alleged that Weitz failed to properly sequence, coordinate, monitor, and inspect the work of the various subcontractors on the project, which caused Commercial Painting extra work and forced it to work in a more inefficient and costly manner. The complaint also included claims for payment under the performance bond issued by Weitz's sureties, interest on retainage under section 66-11-144 of the Tennessee Code,[4] unjust enrichment, enforcement of Commercial Painting's

---

[1] The work included installation of exterior ceiling insulation; exterior wall metal framing; exterior wall insulation; light gauge metal partitions; gypsum board walls, ceilings, and soffits; and suspended ceilings. The contract, with an effective date of September 28, 2004, was signed by the president of Commercial Painting on November 1, 2004, and by Weitz's representative on December 7, 2004.

[2] The defendant named in the complaint's caption was The Weitz Company, Inc., but the first paragraph of the complaint referenced the defendant as The Weitz Company-National. These entities are referred to herein collectively as "Weitz."

[3] Section 12.1 of the contract provides:

> In the event it shall become necessary for either party to institute legal proceedings against the other party for recovery of any amounts due and owing under the Agreement, it is expressly agreed that the prevailing party in any such action shall be entitled to recover from the non-prevailing party all costs, including reasonable attorney's fees, of pre-suit collection attempts, suit, and post judgment or settlement collection including those incurred on appeal.

[4] Transferred to section 66-34-104 of the Tennessee Code by 2008 Public Acts, chapter 804, section 2, effective July 1, 2008.

mechanic's and materialman's lien, and interest and attorney's fees under the Prompt Pay Act of 1991.[5]

Weitz answered and counterclaimed against Commercial Painting and its surety for "no event less than" $500,000 in damages for costs allegedly incurred on the project due to Commercial Painting's delay and defective workmanship.

In a later amendment to its complaint, Commercial Painting asserted additional claims for fraud, intentional and negligent misrepresentation, rescission/reformation of the contract, and $10,000,000 in punitive damages. Commercial Painting alleged Weitz negotiated a six-month extension with the project owner before executing the contract with Commercial Painting, but the construction schedule attached to the contract did not reflect the extension. Commercial Painting also claimed Weitz signed the contract knowing the schedule was outdated by about eight months and that the actual length of the delay was eight to twelve months. Commercial Painting alleged that Weitz knew when it executed the contract that to make up for the delay, it would have to compress the construction schedule and hire extra workers to supplement the work of various subcontractors, including Commercial Painting's drywall work. Commercial Painting also asserted that after negotiating the six-month extension with the project owner, Weitz issued an amended construction schedule that was "fraudulent and unrealistic" in order to earn an early completion bonus.[6] According to Commercial Painting, Weitz continued to issue construction schedules that were unrealistic, and required the subcontractors to adhere to those schedules, never revealing the actual length of the extension until near the end of the project when it became clear that Weitz could not complete construction in time to earn the early completion bonus. Commercial Painting contended that Weitz improperly supplemented Commercial Painting's work by falsely claiming Commercial Painting was not completing its work according to a schedule that Weitz knew contained false information about the project completion date and that Weitz fraudulently charged Commercial Painting for the cost of the supplemental drywall work. Weitz generally denied the allegations in the amended complaint and reiterated the allegations in its counterclaim that Commercial Painting was in breach of the subcontract and did not perform its contractual duties in a timely and workmanlike manner.

---

[5] Tenn. Code Ann. §§ 66-34-101 to -704.

[6] The extension agreement negotiated by Weitz and the project owner included a bonus to Weitz of $8,597 for each day, up to forty-five days, that the project was completed early.

The trial court granted partial summary judgment in favor of Weitz on Commercial Painting's claims for intentional/negligent misrepresentation and fraud, rescission/reformation of the contract, and punitive damages. After a bench trial, the trial court awarded Commercial Painting $450,464.26 for breach of contract, finding that Commercial Painting was entitled to $600,464.26 less a $150,000 offset to Weitz for having to supplement Commercial Painting's work.

The Court of Appeals vacated the trial court's award of partial summary judgment to Weitz, concluding that Commercial Painting established a genuine issue of material fact regarding the intentional and negligent misrepresentation claims. *Com. Painting Co. v. Weitz Co., LLC*, No. W2013-01989-COA-R3-CV, 2016 WL 3519015, at *2 (Tenn. Ct. App. June 20, 2016).

After remand from the Court of Appeals, Commercial Painting filed a second amended complaint including additional alleged facts. The second amended complaint sought compensatory damages of $1,929,428.74, less a payment of $456,170 made by Weitz in June 2013, and increased the punitive damages claim to $200,000,000.

In September and October 2018, a jury heard the case. Commercial Painting presented evidence that Weitz misled it from the outset of the relationship by misrepresenting how far behind schedule the project was, bids submitted by other subcontractors, and the existence of the agreement for extension of time to complete the project. The jury also considered evidence that Weitz tried to compress the work schedule by improperly supplementing Commercial Painting's drywall work, and wrongfully refused to pay for extra work done by Commercial Painting's employees.

The jury awarded Commercial Painting $1,729,122.46 in compensatory damages on each of the claims—breach of contract, unjust enrichment, and intentional misrepresentation, as well as its claim under Weitz's payment bond.[7] The jury also awarded Commercial Painting $3,900,000 in punitive damages. The trial court reduced the compensatory damages by $456,170, the amount of Weitz's earlier payment. The trial court also awarded Commercial Painting $2,083.362.16 in pre-judgment interest and $1,103,549.27 for litigation costs and attorney's fees. The total judgment

---

[7] The jury verdict form showed awards to Commercial Painting of $1,729,122.46 on its intentional misrepresentation claim; $1,729,122.46 on its breach of contract claim; and $1,729.122.46 on its unjust enrichment claim.

was $8,359,863.83.[8]

Weitz appealed, and the Court of Appeals held that the economic loss doctrine applied outside the products liability context when the contract was negotiated between sophisticated commercial entities. The intermediate appellate court affirmed the trial court's judgment for compensatory damages for breach of contract; dismissed the tort claim for intentional misrepresentation and reversed the punitive damages award based on the economic loss doctrine; reversed the trial court's award of pre- and post-judgment interest after finding that interest was not an available remedy under the parties' contract; and vacated the trial court's award of attorney's fees in part after determining that Commercial Painting was entitled only to attorney's fees incurred in obtaining the compensatory damages award. *Com. Painting Co. v. Weitz Co., LLC*, No. W2019-02089-COA-R3-CV, 2022 WL 737468, at *1 (Tenn. Ct. App. Mar. 11, 2022) [("*Commercial Painting III*")].

*Com. Painting Co. Inc. v. Weitz Co. LLC*, 676 S.W.3d 527, 529–32 (Tenn. 2023)

Following issuance of this court's decision in the third iteration of this case, the Tennessee Supreme Court granted permission to appeal. *Id.* at 532. The state high court did so to consider two issues:

1. Whether the Court of Appeals erred in applying [the Tennessee Supreme] Court's holding in *Milan Supply Chain Solutions, Inc. v. Navistar, Inc.*, 627 S.W.3d 125 (Tenn. 2021), and expanding the application of the economic loss doctrine to the circumstances of this case.

2. Whether the Court of Appeals erred in vacating the trial court's award of attorney's fees and in limiting the scope of recoverable fees on remand, and whether the Court of Appeals erred in denying Commercial Painting Company an award of costs and fees on appeal.

*Id.*

---

[8] The judgment for compensatory damages and pre-judgment interest in the amount of $3,356,314.62 was entered against The Weitz Company, LLC, Federal Insurance Company, and St. Paul Fire & Marine Insurance Company, jointly and severally. Punitive damages were awarded solely against Weitz. There was no verdict against The Village at Germantown, Inc. The trial court dismissed Commercial Painting's claims against The Village at Germantown and The Weitz Company, Inc. with prejudice, and these entities are not parties to this appeal. The trial court also dismissed with prejudice Weitz's counterclaims against Commercial Painting and its surety. Commercial Painting withdrew its claim for rescission/reformation before trial.

Ultimately, the Tennessee Supreme Court held that "the economic loss doctrine only applies in products liability cases and should not be extended to other claims. Thus, the economic loss doctrine does not bar Commercial Painting's recovery of compensatory and punitive damages based on its tort claim of intentional misrepresentation against Weitz." *Id.* at 542. The Tennessee Supreme Court, accordingly, reversed "the Court of Appeals' ruling as to the applicability of the economic loss doctrine" and pretermitted the second issue, the attorney's fees issue, in the appeal "[b]ecause this ruling makes Commercial Painting the only prevailing party." *Id.* The Tennessee Supreme Court also "affirm[ed] the judgment in part of the trial court" and remanded to the Court of Appeals "for review of any pretermitted punitive damage issues consistent with this opinion." *Id.*

II.

Because this case is before us on remand from the Tennessee Supreme Court, we are obligated to adhere to its directive, considering no more or less than what we have been directed to consider. Simply stated, "inferior courts must abide by the orders, decrees, and precedents of higher courts." *Weston v. State*, 60 S.W.3d 57, 59 (Tenn. 2001) (quoting *State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995)). "Neither a trial court nor an intermediate court has the authority to expand the directive or purpose . . . imposed upon remand." *Id.*; *see also Payne v. CSX Transp., Inc.*, 467 S.W.3d 413, 438 (Tenn. 2015) ("It is not unusual for [the Supreme Court] to instruct . . . an intermediate appellate court to address . . . pretermitted issues on remand . . . ."). Here, the Supreme Court has mandated that we "review any pretermitted issues regarding the jury's award of punitive damages."

The parties, however, disagree as to what issues were pretermitted in *Commercial Painting III*. Consequently, before this court can fulfill its charge to "review any pretermitted issues regarding the jury's award of punitive damages," we must first determine precisely what those issues are. Weitz asserts that the pretermitted issues include: (1) whether the independent duty rule bars the award of punitive damages in this case; (2) whether this case falls within the narrow circumstances where Tennessee law allows for punitive damages in a breach of contract action; (3) whether the terms of the parties' contractual agreements prohibit the award of punitive damages; (4) whether the trial court erred in awarding punitive damages under *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 902 (Tenn. 1992) ("the *Hodges* issue"); (5) whether the amount of the punitive damages award violated due process;[9] and (6) whether the trial court violated the *Lakeside* rule. In its briefing, Weitz raised two issues in connection with a purported violation of what it terms the *Lakeside* rule. The first is a contention that the trial court failed to perform its role as a thirteenth juror, and the second is that the trial court erred under the *Lakeside*

---

[9] One of the issues identified by Weitz is "[t]he impropriety of a $3.9 million punitive damages award in a case of this type." This matches a subsection of Weitz's briefing, but that subsection is primarily addressed to the *Hodges* issue and, otherwise, raises a challenge based upon an excessive punitive damages award that violates constitutional due process protections.

decision by adopting Commercial Painting's proposed findings of fact and conclusions of law.

Commercial Painting appropriately[10] concedes that the *Hodges* issue was pretermitted and thus is before this court on remand. Commercial Painting, however, contends that this is the only issue that was pretermitted.

In determining which issues were pretermitted, we note that Black's Law Dictionary provides two definitions for the word "pretermit": (1) "To ignore or disregard purposely"; and (2) "To neglect, overlook, or omit accidentally; esp., to fail to include through inadvertence." *Pretermit*, Black's Law Dictionary (12th ed. 2024). In *Commercial Painting III*, after having extensively addressed numerous issues, the Tennessee Court of Appeals expressly stated that "[a]ll remaining issues related to the punitive damages award are therefore pretermitted." *Com. Painting Co. Inc.*, 2022 WL 737468, at *28. The Tennessee Supreme Court noted that this court had "pretermitted all remaining issues related to the punitive damages award." *Com. Painting Co. Inc.*, 676 S.W.3d at 541. As noted above, the Tennessee Supreme Court remanded for review of "any pretermitted issues regarding the jury's award of punitive damages consistent with this opinion." *Id.*

When remanding to a lower court, it is the province of the Tennessee Supreme Court to determine how broad or narrow the scope of its directive will be. Where the Tennessee Supreme Court wants to direct a lower court to reconsider an issue it previously addressed in light of a ruling of the Tennessee Supreme Court or upon some other basis, it employs language to such effect. *See, e.g.*, *Athlon Sports Commc'ns, Inc. v. Duggan*, 549 S.W.3d 107, 109 (Tenn. 2018) (stating "we remand to the trial court to reconsider its determination on valuation in light of our decision to partially overrule *Blasingame*"); *State v. Williams*, 468 S.W.3d 510, 511–12 (Tenn. 2015) (noting that the Court had "remanded the case for consideration in light of *White*"); *Taylor v. State*, 443 S.W.3d 80, 86 (Tenn. 2014) (indicating that "[i]n light of these considerations, we conclude that the appropriate course of action is to remand for the post-conviction court to reconsider the motion to quash under the proper standard"). Alternatively, where the Tennessee Supreme Court merely wants this court to consider issues that had been previously ignored or overlooked, it employs language to that effect. *See, e.g.*, *Ingram v. Gallagher*, 671 S.W.3d 428, 437 (Tenn. 2023) (stating that "[t]his case is remanded to the Court of Appeals for consideration of all issues it deemed pretermitted as moot"); *Moss v. Shelby Cnty. Civ. Serv. Merit Bd.*, 597 S.W.3d 823, 834 (Tenn. 2020) (indicating that the Court was remanding "this case to the Court of Appeals for consideration of pretermitted issues"). In the present case, the Tennessee Supreme Court did not remand for reconsideration of the issues appealed or some subset

---

[10] Because this court reversed the judgment as to the punitive damages award based upon the economic loss doctrine and relatedly the contract agreements of the parties, this court did not address whether the trial court properly applied the *Hodges* factors to determine if the punitive damages award was warranted.

thereof in light of its decision but instead only for consideration by this court of the "pretermitted issues related to the punitive damages award."

There is no basis in the Tennessee Supreme Court's decision to suggest its use of the term pretermitted in its remand to this court employed the term in any other form than the conventional sense thereof. Additionally, there is no basis in the Tennessee Supreme Court's decision for concluding that there exists daylight between the issues this court stated it was pretermitting in *Commercial Painting III*, an action which was noted by the Tennessee Supreme Court, and the "pretermitted issues" that this court has been directed to review on remand. The issues that this court indicated were pretermitted in *Commercial Painting III* are the same issues that the Tennessee Supreme Court noted had been pretermitted by this court in *Commercial Painting III* and are the same issues that were remanded as the issues that had been pretermitted in *Commercial Painting III*. In other words, X equals X equals X. There is no hidden mysterious gnostic meaning of the term pretermitted that is at work in the present case.

With this understanding, we turn to the parties' divide over which issues were pretermitted in *Commercial Painting III* and hence which, if any, issues join with the *Hodges* issue, which the parties properly agree was pretermitted, in being before this court on remand. Regarding the first issue Weitz asserts was pretermitted — whether punitive damages are barred by the independent duty rule — this court in *Commercial Painting III* specifically addressed this issue. *See Com. Painting Co. Inc. v. Weitz Co. LLC*, 2022 WL 737468, at *12-13. In *Commercial Painting III*, this court concluded that Weitz waived its independent duty rule argument by failing to raise the issue before the trial court.[11] *Id*. With this issue having been neither ignored nor overlooked, it was not pretermitted, and, accordingly, consideration of this issue would be beyond the scope of the remand.

Weitz also asserts that two contract-related issues — whether this case falls within

---

[11]

      We begin with the independent duty rule, as this argument is easily disposed of. . . . [T]o the extent that that the independent duty rule provides a separate basis for Appellants' arguments, we conclude that it is waived. . . .

      In this case, Appellants assert that they did ask for a jury instruction on the independent legal duty doctrine, which instruction was refused by the trial court. The problem is that Appellants thereafter did not specifically raise this ruling as an error in their motion for new trial.

      . . . Appellants did not specifically raise the issue of the independent duty doctrine in their memorandum. Instead, they once again confined their jury instruction arguments to the question of fraud and Weitz's reasonable beliefs under the contract. Because this issue was not raised in Appellants' motion for new trial, it is waived under Rule 3(e).

*Com. Painting Co. Inc.*, 2022 WL 737468, at *12–13.

- 8 -

the narrow circumstances where Tennessee law allows for punitive damages in a breach of contract action and, relatedly, whether the actual terms of the parties' contractual agreements prohibit the award of punitive damages — were pretermitted in *Commercial Painting III*. Weitz's underlying substantive briefing on the two contract issues significantly overlaps, as did this court's analysis in addressing the arguments as to these two issues. Over the course of multiple pages of the opinion, this court in *Commercial Painting III* extensively discussed the contract issues. This court ultimately ruled in *Commercial Painting III* that Commercial Painting could not use fraud as an exception that would allow for recovery of punitive damages and was, accordingly, bound by the contract terms that precluded recovery of punitive damages, with the economic loss doctrine being critical to these conclusions.[12] Having extensively discussed the contract issues, this court

---

[12]

Punitive damages, while typically "not available in a breach of contract case," may be awarded in a breach of contract action under "certain circumstances." . . . "[B]ecause punitive damages are to be awarded only in the most egregious of cases, a plaintiff must prove the defendant''s intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence." . . . Thus, the Tennessee Supreme Court appeared to equate egregious conduct with conduct that was committed intentionally, fraudulently, maliciously, or recklessly, so long as that culpability is proven by "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." . . .

Because the jury found that Weitz had engaged in the conduct meeting that culpability level under the clear and convincing evidence standard, Commercial Painting argues that this is the type of case in which punitive damages should be awarded. Specifically, Commercial Painting asserts that our only inquiry should be whether material evidence supports the jury's finding that Weitz engaged in egregious conduct intentionally, fraudulently, maliciously, or recklessly.

We respectfully disagree. Importantly, as previously discussed, because the economic loss rule is applicable here, Commercial Painting is limited to its own contract remedies.

. . .

Commercial Painting argues that one exception is present in this case: fraud. Specifically, Commercial Painting argues that it defies logic to allow a party to take advantage of the limiting terms of a contract when the contract was procured by fraud. Commercial Painting is correct, in part. Specifically, the Tennessee Supreme Court has held that "[l]imitations against liability for negligence or breach of contract have generally been upheld in this state in the absence of fraud or overreaching." *Houghland*, 755 S.W.2d at 773. The problem, of course, with this argument is that under economic loss rule and the limited fraud exception adopted by the Tennessee Supreme Court, Commercial Painting cannot utilize a claim of fraud to avoid the consequences of its own contractual agreements. *See Milan Supply Chain*, 627 S.W.3d at 155. Indeed, limiting parties to their agreed upon contractual remedies is the very purpose of the economic loss rule when applicable to a situation that is governed by a contract. *See Milan Supply Chain COA*, 2019

- 9 -

did not indicate they were among those it was pretermitting in *Commercial Painting III*. Accordingly, consideration of these contract issues on remand would exceed the scope of the remand.

As noted above in footnote 9, Weitz identifies as a pretermitted issue "[t]he impropriety of a $3.9 million punitive damages award in a case of this type." This matches a subsection of Weitz's briefing, but that subsection is primarily addressed to the *Hodges* issue and, otherwise, raises only a challenge based upon an excessive punitive damages award that violates constitutional due process protections. Insofar as this issue is simply Weitz's *Hodges* argument under a different label, we agree, as already noted and as conceded by Commercial Painting, that this issue was pretermitted. Regarding the contention as to an excessive punitive damages award in violation of constitutional due process protections, this court did not address this issue in any form in *Commercial Painting III*; it was pretermitted therein.

Weitz also asserts that this court pretermitted in *Commercial Painting III* the issue of "[t]he Trial Court's violation of the *Lakeside* Rule." In Weitz's briefing, there are actually two *Lakeside*-related arguments advanced by Weitz — whether the trial court failed to perform its role as the thirteenth juror and whether the trial court violated the *Lakeside* rule by adopting Commercial Paining's proposed finding of facts and conclusions of law. While noting Weitz's *Lakeside*-related argumentation, this court ultimately and expressly did not rule upon or address this argument in relation to the punitive damages award. This court expressly stated in *Commercial Painting III* that

> From our reading of Appellants' brief, they do not take issue with the trial court's order approving the jury's verdict or the order denying the motion for new trial. Instead, they are primarily concerned with the December 12, 2018 order approving the award of punitive damages; we, however, have reversed the award of punitive damages on other grounds. Given that Appellant's argument under *UHS of Lakeside* does not appear directed specifically at the orders approving the compensatory damages and the law clearly provides the trial court with wide discretion in approving a jury verdict, we decline to assign error as to those orders.

*Com. Painting Co. Inc.*, 2022 WL 737468, at *29. In other words, having reversed the

WL 3812483, at *4. And, when the rule is applicable, this limitation applies even where fraud is present if the contract is between sophisticated commercial entities and results in only economic losses, as is the case here. *See Milan Supply Chain*, 627 S.W.3d at 155. As such, to allow punitive damages that have been clearly waived under the Subcontract would essentially be to negate the entire purpose of the economic loss rule as it applies in this specific case. We decline to do so.

*Com. Painting Co. Inc.*, 2022 WL 737468, at *24–25, *28.

- 10 -

punitive damages award on other grounds, this court expressly declined to consider the *Lakeside* issues in relation to the punitive damage award, noting the matter but reaching no conclusions thereupon regarding punitive damages.

Therefore, there are four punitive damages issues that were pretermitted in *Commercial Painting III* that, accordingly, fall within the scope of the Tennessee Supreme Court's remand: (1) whether punitive damages were appropriate under *Hodges*, (2) whether the punitive damages award was constitutionally excessive in violation of due process protections, (3) whether the trial court failed to perform its role of thirteenth juror, and (4) whether the trial court erred in adopting Commercial Paining's proposed finding of facts and conclusions of law. In reviewing the parties' briefing on these issues, it is apparent that these were not the primary grounds contested in *Commercial Painting III*. It is to these pretermitted issues that we turn our attention.

III.

We begin with addressing the issue of whether the punitive damage award was appropriate under *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992). Weitz spends multiple pages at the close of its principal brief, pages 89-92, articulating the procedure to be utilized in accordance with the *Hodges* decision and delineating the *Hodges* factors that are to be applied by the trial court in assessing the punitive damages award. Having recited the *Hodges* procedure and factors, the *entirety* of the actual argument advanced by Weitz in asserting error as to this issue consists of the following:

> While the Trial Court and the jury in this case professed to apply the *Hodges* factors, that representation cannot be reconciled with the undisputed facts of this case.

The record reflects that the trial court quite clearly indicated that it was following the procedure delineated under *Hodges*, that it had considered the *Hodges* factors, and made findings and conclusions addressing the *Hodges* factors. On the surface, there is no apparent deficiency regarding the trial court's adherence to the parameters set forth by the Tennessee Supreme Court in the *Hodges* decision regarding punitive damages awards.

Weitz takes the view that trial court's non-adherence to *Hodges* is self-evident, but we are left to wonder how and why the trial court's representation that it adhered to *Hodges* cannot be reconciled with the facts of this case. The Tennessee Supreme Court has explained that

> [i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.

- 11 -

*Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). While noting what *Hodge*s requires and what factors are to be considered in accordance therewith, Weitz fails to articulate where the trial court was deficient. It is not the role of this court to develop that argument for Weitz. We have at best a skeletal argument from Weitz; accordingly, Weitz's *Hodges*-based argument has been waived. *See id.*

IV.

We next turn to the issue of whether the punitive damages award was unconstitutional in violation of due process protections. In the same subsection of Weitz's brief in which it delineates the *Hodges* procedure and factors, Weitz also notes, providing authority in support thereof, that punitive damages awards can be excessive and violate constitutional due process safeguards. As noted above, in relation to its *Hodges* argument, Weitz ultimately offered only a conclusory assertion that *Hodges* was violated. Regarding whether the award was constitutionally excessive, Weitz presents even less, failing to even offer a conclusory assertion that the award was excessive. Weitz's briefing sets forth authority that a punitive damages award can be excessive in violation of constitutional due process protections and noting certain guideposts that should be considered in determining whether an award is excessive. Weitz fails, however, to actually state that the amount of the award is constitutionally excessive. Additionally, even understanding Weitz's brief as implicitly making such an assertion, Weitz fails to offer any explanation or argumentation in support of a contention that the punitive damages award is constitutionally excessive.

As noted above, the Tennessee Supreme Court has explained that

[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.

*Sneed*, 301 S.W.3d at 615. On this issue, we have at best a skeletal argument from Weitz; accordingly, Weitz's argument regarding a constitutionally excessive punitive damage award has been waived. *See id.*

V.

As noted above, Weitz briefing in connection with purported errors regarding to the punitive damages award in connection with the Tennessee Supreme Court's decision in *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303 (Tenn. 2014), actually touches upon two issues. Of the two, we first consider Weitz's contention that the trial court failed to perform its role as thirteenth juror.

- 12 -

"As thirteenth juror, the trial judge must independently weigh and review the evidence presented at trial to determine whether it preponderates in favor of the verdict and decide whether he or she agrees with and is satisfied with the jury's verdict." *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 420 (Tenn. 2013). The Tennessee Supreme Court has indicated that "[t]he purpose of the thirteenth juror rule is to be a 'safeguard . . . against a miscarriage of justice by the jury.'" *Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 308 (Tenn. 2017) (quoting *State v. Moats*, 906 S.W.2d 431, 434 (Tenn. 1995)). Regarding this role, the Tennessee Supreme Court explained

> The reasons given for the rule are, in substance, that the [trial] judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his [or her] training and experience in the weighing of testimony, and the application of legal rules thereto, he [or she] is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and the charge of the court; that, in our system, this is one of the functions the [trial] judge possesses and should exercise—as it were, that of a thirteenth juror. So it is said that he [or she] must be satisfied, as well as the jury; that it is his [or her] duty to weigh the evidence; and, if he [or she] is dissatisfied with the verdict of the jury, he [or she] should set it aside.

*Id.* (quoting *Davidson v. Lindsey*, 104 S.W.3d 483, 488 (Tenn. 2003)).

With regard to appellate review of a trial court's performance of its role as thirteenth juror, the Tennessee Supreme Court has observed that

> [i]n addressing a motion for a new trial, the trial court has such broad discretion that it is not bound to give reasons for its action in granting or denying a new trial based on the preponderance of the evidence. Indeed, when a trial judge approves the verdict without comment, the appellate court will presume that the trial judge has adequately performed his function as the thirteenth juror.

*Id.* "However, trouble ensues where the trial court upholds the verdict yet expresses some level of dissatisfaction with the verdict or with the weight of the evidence or makes statements indicating that it misconceives its duty as thirteenth juror." *Fam. Tr. Servs. LLC v. Green Wise Homes LLC*, 693 S.W.3d 284, 297 (Tenn. 2024).

The trial court in the present case stated the following:

> The Court, in considering the instant motion, has conducted an in depth review of the trial evidence and concludes that the evidence preponderates in

favor (supports the verdict reached by the jury) of the jury's verdict. The court is satisfied with the verdict and concludes that the verdict is supported in all respects by the preponderance of the evidence and the award of punitive damages is supported by clear and convincing evidence.

There is nothing in the present case to suggest the trial court did not perform its role as the thirteenth juror; to the contrary, the record supports the conclusion that the trial court did perform its role. Accordingly, we find Weitz's contention to the contrary unavailing.

VI.

Next, we address Weitz's argument that the trial court erred in adopting almost verbatim an extensive proposed order from Commercial Painting in setting forth the trial court's *Hodges*-related findings of fact and law regarding the jury's punitive damages award. On appeal before this court, Weitz notes that the Tennessee Supreme Court in its *Lakeside* decision "instructed that findings of fact, conclusions of law, opinions, and orders prepared by the trial judges themselves are preferable to those prepared by counsel." Weitz contends that by adopting an essentially verbatim proposed order submitted by Commercial Painting, the trial court judge failed to discharge his duty and seeks reversal on this basis.

In *Lakeside*, the Tennessee Supreme Court was confronted with circumstances in which a trial court judge orally announced during a hearing on a summary judgment motion that she was "ruling now," declaring that "I'm directing the defendant to prepare the order and to establish the rationale for the court's ruling in quite specific detail . . . ." *Lakeside*, 439 S.W.3d at 311. Counsel for the losing party inquired whether the trial court's ruling was as to both ordinary negligence and negligence per se claims. *Id*. The trial court judge indicated her ruling was as to all the claims. *Id*. A proposed order was subsequently prepared by the prevailing party and the counsel for the losing party argued that the order went well beyond anything the court had stated or ruled and was essentially simply a wish list of findings for the prevailing party. *Id*. The trial court conceded that there were parts of the order that only "may have been part of [her] thought processes" and that she had not stated them. *Id*. The trial court, nevertheless, adopted the proposed order. *Id*.

The appellant argued in the *Lakeside* case "that Tenn. R. Civ. P. 56.04 requires trial courts to state their grounds for granting or denying a summary judgment before a draft order is submitted to the court." *Id*. at 312. The Tennessee Supreme agreed, ruling "that Tenn. R. Civ. P. 56.04 requires the trial court, upon granting or denying a motion for summary judgment, to state the grounds for its decision before it invites or requests the prevailing party to draft a proposed order." *Id*. at 316. Much of the Tennessee Supreme Court's analysis in *Lakeside* was tied to the specifics of summary judgments in Tennessee, especially tracking the evolution and language of Tennessee Rule of Civil Procedure 56.04, which includes a requirement that "[t]he trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the

- 14 -

court's ruling." *Id*. at 311–16.

The Court in *Lakeside*, however, went further, addressing more generally the intersection between party-prepared orders and the duties of trial courts. *Id*. at 312–16. The Tennessee Supreme Court indicated that "findings of fact, conclusions of law, opinions, and orders prepared by trial judges themselves are preferable to those prepared by counsel." *Id*. at 314. One of the major concerns with party-prepared orders which the Tennessee Supreme Court highlighted is "the potential for overreaching and exaggeration on the part of attorneys preparing findings of fact when they have already been informed that the judge has decided in their favor." *Id*. at 315 (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 572 (1985)). As for other concerns with reliance upon party-prepared orders, the Tennessee Supreme Court stated

> A trial court's verbatim adoption of verbiage submitted by the prevailing party detracts from the appearance of a hardworking, independent judge and does little to enhance the reputation of the judiciary. At the very least, it gives rise to the impression that the trial judge either has not considered the losing party's arguments, or has done little more than choose between two provided options rather than fashioning a considered, independent ruling based on the evidence, the filings, argument of counsel, and applicable legal principles. At worst, it risks creating an appearance of bias or the impression that the trial court ceded its decision-making responsibility to one of the parties.

*Id*. at 315 (footnotes omitted). While expressing these concerns, the Court indicated that there are "acceptable reasons for permitting trial courts to request the preparation of proposed findings of fact, conclusions of law, and orders. They can promote the expeditious disposition of cases, and they may, when used properly, assist the trial court in placing the litigants' factual and legal disputes in sharper focus." *Id*. at 316.

Ultimately, the Tennessee Supreme Court indicated that "most courts have approved, but not recommended, the practice of trial courts receiving and using party-prepared findings of fact, conclusions of law" *Id*. at 315–16. Where "courts have declined to accept findings, conclusions, or orders [is] when the record provides no insight into the trial court's decision-making process, or when the record 'casts doubt' on whether the trial court 'conducted its own independent review, or that the opinion is the product of its own judgment.'" *Id*. at 316 (citations omitted).

Addressing summary judgment rulings, the Tennessee Supreme Court observed in *Lakeside* the following:

> Despite the amendments to Tenn. R. Civ. P. 56.04 making the statement of grounds mandatory, the Court of Appeals has been reticent to

- 15 -

vacate summary judgment orders that plainly do not comply with Tenn. R. Civ. P. 56.04 and to remand them to the trial court for further consideration. The court continues to conduct archeological digs and to review summary judgment orders when the basis for the trial court's decision can be readily gleaned from the record and to remand the case only when their practiced eyes cannot discern the grounds for the trial court's decision.

We readily agree that judicial economy supports the Court of Appeals' approach to the enforcement of Tenn. R. Civ. P. 56.04 in proper circumstances when the absence of stated grounds in the trial court's order does not significantly hamper the review of the trial court's decision. However, in the future, the resolution of issues relating to a trial court's compliance or lack of compliance with Tenn. R. Civ. P. 56.04 should also take into consideration the fundamental importance of assuring that a trial court's decision either to grant or deny a summary judgment is adequately explained and is the product of the trial court's independent judgment.

*Id*. at 314.

In the wake of the Tennessee Supreme Court's decision, this court has confronted numerous cases in which *Lakeside* issues have arisen, including many that stand outside of the bounds of summary judgment rulings and the dynamics of Tennessee Rule of Civil Procedure 56.04 that were before the Court in *Lakeside* itself. Following the reasoning of *Lakeside* beyond the summary judgment context, this court has applied *Lakeside* to a number of circumstances in which trial courts are required to issue findings of fact and conclusions of law.[13] As particularly prominent examples, this court has applied *Lakeside* to trial court findings in bench trials in general[14] and parental termination proceedings in particular.[15] This court has also applied the *Lakeside* principals to a wide variety of other

---

[13] *See, e.g., Highlands Physicians, Inc. v. Wellmont Health Sys.*, 625 S.W.3d 262, 281 (Tenn. Ct. App. 2020) (noting that "[s]ubsequent cases decided by this Court have applied the rule articulated in *Smith* to matters (1) not involving summary judgment and/or (2) wherein the trial court's directive to draft a proposed order or findings was extended to both parties rather than just the prevailing party"); *Mitchell v. Mitchell*, No. E2017-00100-COA-R3-CV, 2019 WL 81594, at *6 (Tenn. Ct. App. Jan. 3, 2019)("Although Smith involved summary judgment, this Court has previously applied the reasoning in *Smith* to proceedings not involving summary judgment.")

[14] *See, e.g., Deberry v. Cumberland Elec. Membership Corp.*, No. M2017-02399-COA-R3-CV, 2018 WL 4961527, at *2 n.1 (Tenn. Ct. App. Oct. 15, 2018) ("While the court in *Smith* examined independent judgment in the summary judgment context, the holding in Smith is also applicable to other cases including bench trials, such as in the present case."); *F & M Mktg. Servs., Inc. v. Christenberry Trucking & Farm, Inc.*, No. E2015-00266-COA-R3-CV, 2015 WL 6122872, at *7 (Tenn. Ct. App. Oct. 19, 2015) (applying *Lakeside* to findings of fact and conclusions of law following a bench trial).

[15] *See, e.g., In re Bentley J.*, No. E2022-00622-COA-R3-PT, 2023 WL 2380507, at *4 (Tenn. Ct.

- 16 -

trial court findings of fact and conclusions of law[16] — as an illustration, a trial court's making findings related to determining prejudgment interest in response to a remand.[17] Where a trial court is required to issue factual and legal findings in civil proceedings, the general *Lakeside* understanding of the intersection between party-prepared orders and trial court findings has often followed, though doing so with sensitivity to the variances between the circumstances thereof and summary judgment.

We are aware of no Tennessee appellate decision that has ruled upon the applicability of the Tennessee Supreme Court's reasoning in *Lakeside* to findings in punitive damages cases that a trial court is required to make pursuant to the *Hodges* decision. Regarding such findings, the Tennessee Supreme Court has directed that "the trial court must thoroughly review any award of punitive damages made by the jury." *Coffey v. Fayette Tubular Prod.*, 929 S.W.2d 326, 328 (Tenn. 1996). To satisfy this requirement, "[i]n jury cases the trial judge must review the jury's award of punitive damages and 'clearly set forth the reasons for decreasing or approving all punitive awards in findings of fact and conclusions of law demonstrating a consideration of all factors on which the jury is instructed.'" *Culbreath v. First Tenn. Bank Nat. Ass'n*, 44 S.W.3d 518, 528 (Tenn. 2001) (quoting *Hodges*, 833 S.W.2d at 902). This review in punitive damages cases "is referred to as a *Hodges* review,"[18] in reference to the Tennessee Supreme Court

App. Mar. 7, 2023) ("While *Smith* dealt with trial court rulings under Tenn. R. Civ. P. 56.04, this Court also applies *Smith* in the context of parental rights termination."); *In re Nathan C.*, No. E2019-01197-COA-R3-PT, 2020 WL 730623, at *4 (Tenn. Ct. App. Feb. 12, 2020) ("While *Smith* involved a motion for summary judgment, this Court has applied the reasoning in *Smith* to proceedings involving the termination of parental rights."); *In re Marneasha D.*, No. W2017-02240-COA-R3-PT, 2018 WL 4847108, at *4 (Tenn. Ct. App. Oct. 4, 2018) (collecting cases) ("Although *Smith* involved a summary judgment case, this Court has previously applied the reasoning in *Smith* to proceedings involving the termination of parental rights."); *In re Atrivium K.*, No. M2017-01046-COA-R3-PT, 2018 WL 4037414, at *3 (Tenn. Ct. App. Aug. 23, 2018) (applying *Lakeside* to findings of fact and conclusions of law in a parental termination proceeding); *In re Dakota M.*, No. E2017-01855-COA-R3-PT, 2018 WL 3022682, at *6 (Tenn. Ct. App. June 18, 2018) (applying *Lakeside* to findings of fact and conclusions of law in a parental termination proceeding); *In re Colton B.*, No. M2017-00997-COA-R3-PT, 2017 WL 6550620, at *2–5 (Tenn. Ct. App. Dec. 22, 2017) (stating that "it appears that the holding in *Smith* is equally applicable in other cases where trial courts are required to make findings of fact and conclusions of law, such as following bench trials in termination proceedings"); *In re Alleyanna S.*, No. M2015-00544-COA-R3-PT, 2016 WL 697359, at *5 (Tenn. Ct. App. Feb. 19, 2016) (applying *Lakeside* to a parental termination action).

[16] *See, e.g., Hoering v. Hoering*, No. E2021-00529-COA-R3-CV, 2022 WL 987094, at *3 (Tenn. Ct. App. Apr. 1, 2022); *cf. Roach v. Moss Motor Co., Inc.*, No. M2021-00511-COA-R3-CV, 2022 WL 1439349, at *4–5 (Tenn. Ct. App. May 6, 2022) (applying to ruling upon a motion to alter or amend); *but see Dialysis Clinic, Inc. v. Medley*, No. M2017-00269-COA-T10B-CV, 2017 WL 1137100, at *8 (Tenn. Ct. App. Mar. 27, 2017) ("Nothing in *Smith* requires that the same standard is applicable with regard to all orders entered by the trial court or specifically to orders entered regarding discovery disputes.")

[17] *See, e.g., Roach*, 2022 WL 1439349, at *4–5; *Hartigan v. Brush*, No. E2020-01442-COA-R3-CV, 2021 WL 4983075, at *8–12 (Tenn. Ct. App. Oct. 27, 2021).

[18] *McLemore ex rel. McLemore v. Elizabethton Med. Inv., Ltd. P'Ship*, 389 S.W.3d 764, 780 (Tenn.

decision setting forth this obligation. *See generally Hodges*, 833 S.W.2d 896.

Ultimately, we need not decide whether *Lakeside* applies to *Hodges* findings issued by a trial court. Such a decision is unnecessary because assuming for purposes of argument that *Lakeside* is applicable to such findings, Weitz is, nevertheless, not entitled to what it seeks, reversal. Furthermore, vacating and remanding is unwarranted under the circumstances of the present case.

Unlike many cases presenting *Lakeside* questions to this court,[19] the trial court in this case itself was confronted with a motion that asserted, among other objections, that the trial court had erred in failing to meet the expectations of trial courts established in *Lakeside*. The motion was filed as part of a motion for a new trial filed approximately a month after issuance of the trial court's order setting forth the *Hodges* findings, and the trial court ruled upon the motion, in which Weitz advanced its *Lakeside* objection, approximately ten months later. In its order ruling upon the motion, the trial court reflected upon Weitz's *Lakeside* arguments, the expectations for trial courts under *Lakeside*, the evidence of this case, the parties' proposed findings, the court's own actions, and its own understanding of the facts and law in the case. The trial court then declared the following:

> Defendant makes much out of the fact that the court did not conduct a hearing upon the proposed findings and conclusions submitted by the parties. The court did not require such a hearing, having sat through a three (3) week-long trial with the parties, and having reviewed the proof and notes to determine the appropriateness of the award of punitive damages. The Court was quite familiar with the proof and legal arguments of the parties. Quite simply, the Court saw no basis in fact or law to disagree with the jury's verdict.

> The Court considered the proposed findings and conclusions of law of both parties. Defendant's proposed findings and conclusions were diametrically opposed to the verdict without sufficient support or corroboration to convince the court that its position should be accepted. On the other hand, Plaintiff's proposed findings and conclusions mirrored much, if not all, of the credible testimony presented at trial, while discounting the less credible evidence offered by the Defendant. The Court considered the

---

Ct. App. 2012).

[19] *See, e.g., Long v. Long*, 642 S.W.3d 803, 814 (Tenn. Ct. App. 2021) (indicating the issue is often considered without an argument having been raised before the trial court); *Vaughn v. DMC-Memphis, LLC*, No. W2019-00886-COA-R3-CV, 2021 WL 274761, at *6 (Tenn. Ct. App. Jan. 27, 2021) (collecting cases) (noting that "we have often considered this issue in the absence of the argument being raised in the trial court").

submissions and concluded the plaintiff's proposal actually represented both the jury's verdict and the opinion of the Court as to the decision that should be reached in this case.

. . .

The Findings of Fact and Conclusions of law entered in this case accurately reflect the court's opinion of the case and its confirmative decision after reviewing and chronicling the evidence with the aid of the proposed findings and conclusions submitted by the parties. *See Smith v. U[H]S [of] Lakeside, [Inc.]*, 439 S.W.[2]d [303], 315-16 (Tenn. 2014).

The trial record, as reviewed by the Court, does not create any doubt the Court's decisions in crafting and adopting its final findings and conclusions were arrived at through the court's own private deliberations and decisions.

Weitz contends that reversal is necessary because of the trial court's verbatim adoption of Commercial Painting's proposed findings, nevertheless, violated the requirements established in *Lakeside*. This contention overreaches in multiple respects. Foundationally, where a party has prevailed, in the absence of unusual circumstances, the remedy has been vacating with this court remanding for the trial court to enter an appropriate order in accordance with *Lakeside*, not reversal.[20] Furthermore, in the wake of

---

[20] *See, e.g., Steinberg v. Steinberg*, No. W2022-01376-COA-R3-CV, 2023 WL 8827667, at *6 (Tenn. Ct. App. Dec. 21, 2023)) ("[W]e vacate the trial court's judgment and remand this matter to the trial court for entry of an appropriate order demonstrating the trial court's exercise of its independent judgment and individualized decision-making."); *Kherani v. Patel*, No. E2022-00983-COA-R3-CV, 2023 WL 6307502, at *10 (Tenn. Ct. App. Sept. 28, 2023) (stating that "we are left with two alternatives: vacate the order and remand for further consideration by the trial court or conduct an 'archeological dig[]' if 'the basis for the trial court's decision can be readily gleaned from the record'" (quoting *Lakeside*, 439 S.W.3d at 314)); *Hoering*, 2022 WL 987094, at *3 (noting that the appellate court has the option to remand for entry of a sufficient order or to solider on); *Calzada v. State Volunteer Mut. Ins. Co.*, No. M2020-01697-COA-R3-CV, 2021 WL 5368020, at *4–6 (Tenn. Ct. App. Nov. 18, 2021) ("If those requirements are not met, an appellate court may vacate the trial court's order granting summary judgment and remand the case for entry of an order that complies with *Lakeside* and Rule 56.04, rather than conduct 'an archeological dig [to] endeavor to reconstruct the probable basis for the [trial] court's decision[.]'" (quoting *Lakeside*, 439 S.W.3d at 314)); *Smith v. All Nations Church of God*, No. W2019-02184-COA-R3-CV, 2020 WL 6940703, at *13 (Tenn. Ct. App. Nov. 25, 2020) (noting that, in response to *Lakeside*, "we have held that the more modern remedy for deficiencies in the trial court's explanation for its ruling is to vacate the ruling and remand to the trial court for the entry of a more illuminating order"); *Cunningham v. Eastman Credit Union*, No. E2019-00987-COA-R3-CV, 2020 WL 2764412, at *5 (Tenn. Ct. App. May 27, 2020) ("[W]e cannot determine that Executor's proposed findings of fact and conclusions of law, adopted nearly verbatim by the trial court, represent the trial court's own independent analysis and judgment. Accordingly, we vacate the trial court's judgment and remand for entry of findings of fact and conclusions of law that reflect the trial court's independent 'deliberations and decision.'" (quoting *Lakeside*, 439 S.W.3d at 316)); *West v. West*, No. E2018-02277-COA-R3-CV, 2020 WL 1488582, at *5 (Tenn. Ct. App. Mar. 26, 2020) ("[T]he appropriate remedy is to vacate the ruling and remand this matter to the trial court to issue sufficient findings and conclusions."); *Hutton Team, LLC v. Ingles Markets, Inc.*, No. E2018-01372-COA-R3-CV, 2020 WL

*Lakeside*, this court has often simply soldiered on to address the substance of an appeal.[21] This court has been especially reluctant to vacate and remand rather than soldiering on where a case, much like the present one, has been lingering in the judicial system for many years.[22] Vacating has occurred primarily in cases which this court cannot decipher the trial court's reasoning or what its findings were as to an important issue or issues in the case,[23]

528023, at *7 (Tenn. Ct. App. Jan. 31, 2020) (noting that "when the absence of stated grounds does not significantly impair appellate review, we may, in our discretion, decline to vacate the order"); *Battery All., Inc. v. Beiter*, No. W2018-02117-COA-R3-CV, 2019 WL 6954184, at *5–7 (Tenn. Ct. App. Dec. 19, 2019) (stating that "the appropriate remedy is to vacate and remand to the trial court for a more in-depth ruling"); *In re Colton B.*, 2017 WL 6550620, at *5 (noting that vacating and remand is an appropriate remedy with the trial court directed to enter an order that is the product of its own judgment); *F & M Mktg. Servs., Inc.*, 2015 WL 6122872, at *7 (remanding for entry of an appropriate order providing insight into the trial court's reasoning and reflecting its independent judgment).

[21] *See, e.g., Sura v. Jimmy's Last Laugh, LLC*, No. M2023-01174-COA-R3-CV, 2024 WL 2992962, at *7 (Tenn. Ct. App. June 14, 2024) ("In that situation, we also have the choice to either independently review the record so long as the deficient order does not 'significantly hamper' our review or to remand the case to the trial court for an order that complies with Rule 56.04." (quoting *Lakeside*, 439 S.W.3d at 314)); *Hoering*, 2022 WL 987094, at *3; *Hutton Team, LLC*, 2020 WL 528023, at *7 (concluding that the court could proceed to consider despite a violation where the grounds for the ruling were discernable); *In re Kingston A.B.*, No. M2018-02164-COA-R3-PT, 2019 WL 3946095, at *7 n.9 (Tenn. Ct. App. Aug. 21, 2019) ("Moreover, we have independently reviewed the evidence presented in this case regardless of the trial court's findings and determined that the evidence was insufficient to establish a ground for termination."); *Davidson Pabts, LLC v. Worsham*, No. M2014-01061-COA-R3-CV, 2015 WL 4115174, at *3 (Tenn. Ct. App. May 18, 2015) (proceeding to consider the case on the merits where the court was able to "readily discern the trial court's reasoning from the record").

[22] *See, e.g., Holston Presbytery of the Presbyterian Church (U.S.A.), Inc. v. Bethany Presbyterian Church*, No. E2022-01337-COA-R3-CV, 2023 WL 4789082, at *5–6 (Tenn. Ct. App. July 27, 2023), *perm. app. denied* (Tenn. Dec. 20, 2023); *Woody v. Woody*, No. E2020-01200-COA-R3-CV, 2022 WL 678976, at *11 (Tenn. Ct. App. Mar. 8, 2022) (soldiering on and stating that "we are mindful that this case has been ongoing for several years at this point, and proceeding to the merits will afford the parties and Harper resolution"); *Roach*, 2022 WL 1439349, at *4–5; *Long*, 642 S.W.3d at 812–17; *Fed. Nat'l Mortg. Ass'n v. Kebede*, No. W2019-00227-COA-R3-CV, 2020 WL 7060019, at *4 (Tenn. Ct. App. Dec. 2, 2020) (noting the deficiency of the order the court, but soldiering on and in doing so noting "that disputes concerning this property have been fought in a multitude of cases over nearly a decade. As such, we will proceed to consider the merits of Mr. Kebede's arguments in order not to prolong this already protracted dispute."); *Huggins v. McKee*, 500 S.W.3d 360, 366–67 (Tenn. Ct. App. 2016) (soldiering on where the case "had been awaiting resolution for nearly a decade"; in accordance with "the interest of providing the parties to this case a final resolution of the issues" the court exercised its "discretion to proceed to consider the merits of this appeal").

[23] *See, e.g., Friedsam v. Krisle*, No. M2021-00530-COA-R3-CV, 2022 WL 3654658, at *10 (Tenn. Ct. App. Aug. 25, 2022) (remanding because the trial court's order was "virtually devoid of findings" as to "a central issue in the case"); *Calzada*, 2021 WL 5368020, at *8 (vacating and remanding because "in the absence of any explanation whatsoever that is reflective of or responsive to the specific arguments raised in this case, we are left to guess as to why the trial court reached its conclusion"); *Lucy v. Lucy*, No. W2020-01275-COA-R3-CV, 2021 WL 2579763, at *4 (Tenn. Ct. App. June 23, 2021) (declining to solider on because "[w]ithout any factual findings to illuminate its reasoning, we are left to guess at how the trial court reached its ultimate decision"); *Bertuccelli v. Haehner*, No. E2017-02068-COA-R3-CV, 2018 WL 6199229,

where determining the basis of the trial court's decision would require an "archeological dig" through the record,[24] or where there is real doubt as to whether the findings are actually the trial court's understanding or instead reflect an outsourcing of the reasoning/rationale from the trial court to the prevailing party.[25]

In this case, while we agree with Weitz that the trial court's approach in adopting Commercial Painting's proposed order nearly verbatim was not in accordance with *Lakeside* (again assuming for purposes of argument its applicability to *Hodges* findings), vacating is unnecessary and would be an unwarranted elevation of form over substance in the present case. This is so for multiple interrelated reasons. One, this is not a case in which there is a thin order or uncertainty as to the bases of the ruling. The findings of fact and conclusions of law issued by the trial court in relation to *Hodges* are extensive and thorough. In other words, we are not left guessing as to the bases of the decision to uphold the punitive damages award in this case or needing to conduct an "archeological dig" to determine the bases. Two, as reflected in various orders issued by the trial court including but not limited to the trial court's response to Weitz's *Lakeside* argument in its motion for new trial, the trial court conducted its own review in the present case. Three, there is no substantive argument to even potentially solider on to address in this case. Weitz failed to develop any substantive attack on the trial court's factual or legal findings related to *Hodges*. Despite the thoroughness of the trial court's findings, Weitz has not developed a substantive attack against the trial court's *Hodges* findings. Thus, Weitz's challenge to the

---

at *4 (Tenn. Ct. App. Nov. 28, 2018) (vacating and remanding because "there is nothing in the trial court's 'final order' that explains its decision to grant Appellees' motion for summary judgment as to all claims and causes, and the order does not state the legal grounds for the grant of such summary judgment"); *In re Atrivium K.*, 2018 WL 4037414, at *3 (vacating and remanding in response to limited discussion and little elaboration in an order that instead relied upon conclusory assertions seemingly cut and paste from the complaint); *In re Dakota M.*, 2018 WL 3022682, at *6 (vacating and remanding for entry of an order that complies Tennessee Code Annotated section 36-1-113(k) in a parental termination case because the trial court's written findings contained "little to no elaboration"); *Ray v. Petro*, No. M2013-02694-COA-R3CV, 2015 WL 137309, at *5 (Tenn. Ct. App. Jan. 9, 2015); *Eidson v. City of Portland*, No. M2013-02256-COA-R3-CV, 2014 WL 7421171, at *3 (Tenn. Ct. App. Dec. 29, 2014) (vacating and remanding where the court was "unable to discern the basis of the trial court's decision to grant summary judgment").

[24] *See, e.g., McEarl v. City of Brownsville*, No. W2015-00077-COA-R3-CV, 2015 WL 6773544, at *3 (Tenn. Ct. App. Nov. 6, 2015).

[25] *Regions Com. Equip. Fin. LLC v. Richards Aviation Inc.*, No. W2020-00408-COA-R3-CV, 2021 WL 1811754, at *5–6 (Tenn. Ct. App. May 6, 2021); *Cunningham*, 2020 WL 2764412, at *5 ("[W]e cannot determine that Executor's proposed findings of fact and conclusions of law, adopted nearly verbatim by the trial court, represent the trial court's own independent analysis and judgment. Accordingly, we vacate the trial court's judgment and remand for entry of findings of fact and conclusions of law that reflect the trial court's independent 'deliberations and decision.'"); *In re Colton B.*, 2017 WL 6550620, at *5; *cf.* Lawrence A. Pivnick, 2 Tenn. Cir. Ct. Prac. § 27:7 n.2 ("Even though trial court's final order contains sufficient findings of fact and conclusions of law . . ., a party on appeal may contest whether those findings and conclusions clearly represented the trial court's own analysis and deliberations.").

trial court's *Hodges* order is somewhat reminiscent of Gertrude Stein's observation regarding Oakland: "[T]here is no there there."[26] Four, while this court has expressed skepticism of party-prepared orders that include language noting that the decision reflects the independent analysis of the trial court,[27] the circumstances of this case are distinct. A month after the issuance of the trial court's *Hodges* order, Weitz raised the *Lakeside* issue in a motion for new trial. Reflecting upon the motion and *Lakeside*, a little under a year later the trial court expressly indicated that the findings in its *Hodges* order reflected the judge's thinking about the case. In a considered order as to which the trial court had time for contemplation to reflect on its prior order, the trial court made plain that the findings previously issued expressed the judge's own views and understanding of the facts and law of this case. As a result, vacating and remanding in the present case would amount to little more than requiring the trial court judge to perform an editing task, requiring putting a sufficient number of touches upon its prior findings to render the opinion the judge's rather than simply an adoption of Commercial Painting's proposed finding.[28] This editing would be occurring within a backdrop in which Weitz has not developed any actual substantive attack on the trial court's original *Hodges* findings. Five, the only potential value of vacating and remanding in the present case is related to the negative appearance stemming from the trial court's adoption of Commercial Painting's proposed *Hodges*-related findings. Under the circumstances of the present case, we fail to see how that purpose would be served by a remand that would simply force the trial court to edit an opinion that the trial court judge has indicated is an accurate reflection of his views and as to which Weitz has not developed any substantive challenge. Six, this court has been especially disinclined to vacate and remand in cases that have lingered in litigation for many years. This case has been being litigated for nearly twenty years. This decision is the fourth round of this case being addressed by this court. Accordingly, we conclude that vacating and remanding in this case is unwarranted.

## VIII.

---

[26] Gertrude Stein, EVERYBODY'S AUTOBIOGRAPHY 289 (1937).

[27] *See, e.g., Johnson v. Johnson*, No. E2023-01272-COA-R3-CV, 2024 WL 3596131, at *3 (Tenn. Ct. App. July 31, 2024); *Long v. Long*, 642 S.W.3d at 813–15; *Mitchell*, 2019 WL 81594, at *6–7.

[28] *See, e.g., Salas v. Rosdeutscher*, No. M2021-00449-COA-R3-CV, 2024 WL 1119818, at *1 (Tenn. Ct. App. Jan. 9, 2024) ("The trial court's revisions, additions, and deletions to the order lead us to conclude that the final order entered by the trial court reflected the judge's independent judgment, deliberation, and decision."); *Woody*, 2022 WL 678976, at *11 (stating that "this Court has previously determined that if a trial court alters a party-prepared order, that order can pass muster under *Lakeside*"); *Vaughn*, 2021 WL 274761, at *6 ("[T]he written order ultimately entered by the trial court contains two paragraphs that were not included in the proposed order. Although Ms. Vaughn appears to take issue with the limited alterations made by the trial court, these alterations confirm that the order entered was not a verbatim copy of what was submitted by DMC, but was the trial court's own independent judgment.").

For these reasons, addressing solely the issues pretermitted in *Commercial Painting III*, we affirm the judgment of the trial court. Costs of this appeal are taxed to the appellant, The Weitz Company LLC, for which execution may issue if necessary. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE